# Staunton.

DOWNING AND OTHERS v. THOMPSON AND OTHERS.

September 22, 1904.

1. CORPORATIONS—*Pledge of Stock—Subsequent Sale by Owner—Rights of Parties—Court Charters—Code, Sections 1133 and 1135.*—The pledgee, for value, of stock in an incorporated company, who holds the certificates for the stock, accompanied by an irrevocable power of attorney from the owner thereof, authorizing the transfer of the same on the books of the company to such pledgee, is entitled to hold the same for the purpose of the pledge as against a subsequent purchaser thereof from the former owner. Whether or not section 1133 of the Code, relating to the transfer of stock, applies to stock issued by companies holding court charters, it is unnecessary to decide, for, if it does not apply, neither does section 1135, relating to the mode of obtaining a new certificate of stock from the company, upon which appellee relies for his protection, apply to such companies, and appellee has no certificate to rely upon, and if both sections apply to such charters appellants are protected, and may hold the stock pledged as a security for their debt.

Appeal from a decree of the Circuit Court of Warren county in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Giles Cook, Jr.*, and *W. B. Richards*, for the appellants.

*R. E. Byrd* and *C. W. Forsythe,* for the appellees.

Harrison, J., delivered the opinion of the court.

This case involves the title to 166 shares (par value $10.00 per share) of the stock of the Carson Lime Company.

It appears that J. S. B. Thompson who was the owner, upon the books of the company, of the stock in question, assigned and delivered the same, in November, 1892, to the appellants to secure and save them harmless from loss as his accommodation endorsers upon a negotiable note for $1,000.00, or any renewals thereof; that accompanying the assignment was an irrevocable power of attorney, executed by Thompson, authorizing and directing the transfer of the stock on the books of the company; that said note, which had been discounted by the Front Royal National Bank, after being renewed from time to time and curtailed by Thompson, was finally paid by the endorsers to the bank, the amount so paid being $760.00; that Thompson never paid this balance, and the appellants continued to hold the note, together with the assigned certificate of stock as collateral, without having had the stock formally transferred to themselves on the books of the company.

In April, 1901, Samuel Carson, one of the appellees, instituted proceedings in the Circuit Court of Warren county under section 1135 of the Code of 1887, as amended by Acts 1895-6, p. 36, to have the stock in question transferred to him on the books of the company, alleging that he had, in March, 1901, purchased the stock from the appellee, Thompson, and that the original ecrtificate in Thompson's name had been lost. This proceeding was supported by the affidavit of the appellee, J. S. B. Thompson, that he had sold the stock to Samuel Carson, and had executed to him an assignment thereof, but was unable to deliver him the certificates because they had been lost for more than seven years, and could not be found.

Section 1135 of the Code is as follows:

"*How new certificates may issue when former one lost.*——*When a person to whom such a certificate is issued or to whom same has been duly assigned, alleges it to have been lost, he shall file in the office of the company, first, an affidavit setting forth the time, place and circumstances of the loss; second, proof of his having advertised the same in a newspaper once a week for one month; and third, a bond to the company, with one or more sufficient sureties, with condition to indemnify all persons against any loss in consequence of issuing a new certificate in place of the former, and thereupon, the board shall direct such new certificate, and the same shall be issued accordingly. But if such certificate is alleged to have been lost for a period of seven years or more, any person claiming title to the shares of stock represented by such certificate may file a petition in the Circuit or Corporation Court of the county or city wherein the principal office of the company is, or before the judge thereof in vacation, briefly setting forth the facts upon which the claimant relies to sustain his title thereto, a copy of which petition shall be served on the company, in like manner as notices are served, at least two weeks before the petition is heard; and, if such shares of stock stand on the books of the company in the name of some person other than the claimant, a copy of the petition shall likewise and in like manner be served on such other person, or his personal representative, and notice of the claimant's intention to file his petition shall be published in some newspaper at least once a week for two successive weeks. On the hearing of the petition the court or judge shall consider such evidence as may be adduced by any party in interest, whether the same be in the nature of oral testimony, paper writing, depositions or otherwise; and if the court or judge shall be satisfied that the petitioner is entitled to the shares of stock which he claims, then an order shall be entered on the minute-book of the court requiring the issuance of a new*

*certificate for the same, without the execution of any bond by way of indemnity or otherwise. And when the new certificate shall have been issued and delivered under an order of court as herein provided, the company shall forever be discharged and relieved from any and all liability to any and all persons who may subsequently claim an interest in the stock of the company under or by virtue of the former certificate.*"

The result of this proceeding was an order in favor of Samuel Carson, directing the Carson Lime Company to issue to him a new certificate for this 166 shares of stock in the place of the original certificate. Of this proceeding the appellants had no actual notice. As soon as they learned of it, they filed their bill in this case, alleging the facts already narrated, with respect to the original certificate having been assigned to them for a valuable consideration, long prior to the purchase of the stock by Samuel Carson, and praying that if not issued the Carson Lime Company be restrained from carrying out the court's order by issuing the new certificate to Samuel Carson, and, if already issued, that he be restrained from transferring or otherwise disposing of such certificate until the further order of the court; that the new certificate issued under the court's order to Carson be cancelled, and that the 166 shares of stock, evidenced by the original certificate held by complainants, be sold and the proceeds applied as far as necessary to reimburse complainants the amount they had been compelled to pay as the endorsers of J. S. B. Thompson.

To this bill answers were filed by Samuel Carson and the Carson Lime Company, and, upon the hearing, the temporary injunction granted appellants was dissolved, and their bill dismissed.

Appellants relied in the court below, and rely here, upon section 1133 of the Code of 1887, as affording them complete protection against the claim set up by the appellee, Samuel Carson, to the stock in question.

Section 1133 is as follows:

"*How stock transferred.—If any such person shall, for valuable consideration, sell, pledge, or otherwise dispose of any of his shares of stock to another, and deliver to him the certificate for such shares, with a power of attorney authorizing the transfer of the same on the books, the title of the former (both at law and in equity) shall vest in the latter so far as may be necessary to effect the purpose of the sale, pledge, or other disposition not only as between the parties themselves, but also as against the creditors of and subsequent purchasers from the former, subject to the provisions of section eleven hundred and thirty.*"

The learned judge of the Circuit Court held that this section could not be invoked as affording appellants any protection; that it was not applicable to charters like that of the Carson Lime Company, granted by a court under the provisions of section 1145; that the law of section 1133 was enacted long before court charters were authorized, and when the legislature alone could grant charters, and that the history of the law showed that the statute relied on was only applicable to charters granted by the legislature.

It is not necessary for this court to consider or express any opinion upon this question, for whether the view of the Circuit Court be sustained or reversed the result is, in our opinion, the same to the appellants. If it be true that section 1133 is not applicable to court charters, it is for the same reasons true that section 1135 is not applicable to such charters; and if the last mentioned section is not applicable to court charters, then the Circuit Court was without jurisdiction to entertain the proceeding instituted by Samuel Carson, and to enter the order in his favor directing the Lime Company to issue him the new certificate of stock. In this view, that proceeding becomes null and void, and the appellee Carson acquires no rights thereunder, and the right and title of the appellants to the 166 shares of stock

represented by the original certificate held by them is unimpaired. If, on the other hand, the Circuit Court erred in its conclusion, and section 1133 is applicable to court charters, then the appellants must prevail, because that section clearly affords them ample protection against the claims of the appellee Carson. So that, in either case, appellants were entitled to prevail.

We are of opinion that the Circuit Court should have perpetuated the injunction, and, in accordance with the prayer of the bill, cancelled the new certificate issued to Samuel Carson, and proceeded to sell the 166 shares of stock, in question, and apply the proceeds, as far as necessary, to the claim of the appellants.

For these reasons, the decree complained of must be reversed, and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed.*